## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KRISTY M. ALBRECHT, as Mother and )
Next Best Friend for the Minor, N.S.S., )
)
             Plaintiff, )
)
          v. )      21 C 2016
)
DICK'S SPORTING GOODS, INC., )
)
         Defendant. )

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Dick's Sporting Goods, Inc.'s ("DSG") Motion for Summary Judgment. For the following reasons, the Court grants the Motion.

## BACKGROUND

In resolving a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The following facts are taken from the record and are undisputed unless otherwise noted.

On February 27, 2020, eleven-year-old N.S.S. was dropped off at the Geneva Dick's Sporting Goods store located at 618 Commons Drive, Geneva, Illinois ("Subject Store") with his friend Christian Roitburd. N.S.S. and Roitburd were joined by their

two friends (also minors), Caleb Yi and Benjamin Barton. Absent from the group were any of the boys' parents or guardians.

The Subject Store has two stories and two escalators for customers to reach the second level from the first level and vice versa. On and before February 27, 2020, both escalators were functioning properly. On the day in question, N.S.S. and his friends used the "up" escalator to reach the second level of the Subject Store. While upstairs, N.S.S. and his friends looked at various sporting equipment, went to the boxing area, played catch with the footballs, and ran around the store.

Brian Schluntz, a bike tech working in the area, addressed the disruptive behavior with the children and called the DSG store manager on duty, Christine Toman, to come out to the floor to address them as well. Toman directed the children to behave and told Schluntz to "keep an eye on the kids." About ten to fifteen minutes later, Schluntz again had to address the kids because they were throwing balls over the railing at customers below. Toman was called to the floor a second time.

The parties dispute whether N.S.S. or any of his friends were crawling, walking, or climbing on the balcony railing overlooking the first floor prior to "screwing around" on the escalators. Yi testified he did not remember seeing any of his friends, including N.S.S., climbing on the railing. He also testified, however, that he did see kids climbing on the railings. Toman testified that when she came out to the floor for the second time, she "saw one – and I can't identify which one – of the teenagers crawling across the railing, walking along the edge of the railing, and climbing back across the railing."

2

When she saw this happen, Toman approached the group of kids—of which she says N.S.S. was a part—and asked them to leave the store. Toman was then called away.

After playing with the footballs and other sporting equipment on the second level, N.S.S. decided to "screw around" on the escalators. N.S.S. defined "screwing around on the escalators" to mean that he would sit facing forward on the down escalator's moving handrail like riding on a bicycle, allowing the moving handrail to carry N.S.S. approximately three feet forward, then swing his legs over to dismount and exit the moving escalator. Customers are not permitted to straddle the handrail of the escalators at the Subject Store. Before falling, N.S.S. faced forward while straddling the left handrail on the "down" escalator. N.S.S. testified that the act of straddling the escalator's moving handrail and eventually dismounting took about a second to complete. He completed this act maybe five or six times before falling.

N.S.S. was aware that straddling the handrail of a moving escalator was dangerous. N.S.S. admitted that he learned the correct way to ride an escalator approximately six years before his fall from his mother, Albrecht. Moments before N.S.S.'s fall, Roitburd straddled and rode the escalator's handrail, and N.S.S. followed behind him. Roitburd's leg got stuck, and Roitburd was unable to dismount. N.S.S. then collided with Roitburd, causing N.S.S. to fall forward off the side of the escalator (approximately twenty feet). N.S.S. testified that Roitburd hit his leg and Roitburd hitting him caused N.S.S. to fall off the escalator.

3

Before N.S.S. fell, no DSG employee witnessed N.S.S. nor Roitburd riding/straddling the escalator's handrail. N.S.S.'s incident is the first time someone has fallen off either of the Subject Store's escalators. No DSG employee has ever seen a customer straddle and/or ride the handrail on either escalator at the Subject Store. Nor did anyone complain to DSG employees that customers were inappropriately using the escalators. If a DSG manager observed a customer straddling the handrail of either escalator, the manager would have the authority to remove that customer from the store. However, neither Toman, nor any other DSG manager, has ever had to remove a child or customer from the store for riding one of the escalator's handrails.

Based on the events of February 27, 2020, Plaintiff, as mother and next best friend for her son, N.S.S., filed a two-count Complaint against DSG. Count I alleges negligence and Count II seeks recovery for N.S.S.'s medical expenses allegedly incurred from his fall at the Subject Store pursuant to the Family Expense Act, 750 ILCS 65/15. In the Complaint, Plaintiff contends DSG breached its duty owed to N.S.S. because DSG (1) operated, managed, maintained, and controlled the Subject Property in an unsafe manner; (2) allowed the escalator at the Subject Premises to remain in an unsafe and dangerous condition; (3) allowed children to use its retail area to jump, run, and climb throughout the Subject Store; (4) failed to place barriers/guards near the escalators; and (5) failed to supervise children at the Subject Property adequately. Plaintiff argues that as a proximate cause of DSG's negligent acts or omissions, "[N.S.S.] was caused to violently and forcefully slip, trip, and/or fall from the escalator

4

on the aforesaid premises, thereby causing [N.S.S.] to sustain severe and disabling injuries." DSG now moves for summary judgment.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cnty.*, 752 F.3d 708, 712 (7th Cir. 2014) (cleaned up).

In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1074 (7th Cir. 2016). The nonmovant "must go beyond the pleadings" to demonstrate that there is evidence "upon which a jury could properly proceed to find a verdict in [their] favor." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168–69 (7th Cir. 2013). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). And "[c]onclusory statements, not grounded in specific facts" cannot defeat a motion for summary judgment. *Bordelon v. Bd. of Educ. of the City of Chi.*, 811 F.3d 984, 989 (7th Cir. 2016) (cleaned up).

Not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted). In deciding a motion for summary judgment, the Court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). The Court cannot weigh conflicting evidence, assess the credibility of witnesses, or determine the ultimate truth of the matter, as these are functions of the jury. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986); *Omnicare, Inc. v. UnitedHealth Grp., Inc*., 629 F.3d 697, 704–05 (7th Cir. 2011).

## **DISCUSSION**

DSG moves for summary judgment in its favor, arguing Plaintiff's negligence claim fails because it did not owe N.S.S. a duty of care. Specifically, DSG claims it did not owe N.S.S. such a duty because the dangerous condition (riding the handrail at the top of a moving escalator) was open and obvious, and the magnitude of the burden that imposing a duty on DSG in this case would create, in conjunction with the consequences of imposing such a burden, is unjustified. DSG further argues N.S.S. cannot prevail on a theory of premises liability[1] because DSG did not create the purportedly dangerous condition, and DSG's employees did not have actual or constructive notice that N.S.S. was riding the escalator's handrail before his fall.

---

[1] Although labeled as a negligence claim, Plaintiff appears to assert both negligence and premises liability claims in the Complaint. As explained below, Plaintiff fails to make a case under either theory of liability.

Under Illinois law, to recover on a negligence claim, the plaintiff must establish the existence of a duty owed by the defendant, a breach of that duty, and an injury proximately resulting from that breach. *Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2008) (citing *Wilfong v. L.J. Dodd Constr.*, 401 Ill. App. 3d 1044, 1051 (2d Dist. 2010). The existence of a duty is a question of law. *Id.* Four factors are relevant to this analysis: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 14.

DSG argues a duty did not exist here because the risk was open and obvious. In Illinois, the open and obvious doctrine is an "exception to the general duty of care owed by a landowner." *Dunn*, 880 F.3d at 906 (citing *Park v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 2011 IL App (1st) 101283, ¶ 12). The exception exists because "persons who own, occupy, or control and maintain land are not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious." *Bucheleres v. Chi. Park Dist.*, 171 Ill. 2d 435, 447–48 (1996); *see also Ward v. K Mart Corp.*, 136 Ill. 2d 132, 148 (1990) ("Certainly a condition may be so blatantly obvious and in such position on the defendant's premises that he could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the condition."). The open and obvious rule applies just the same when children are involved. *Gutterman v. Target Corp.*, 242 F. Supp. 3d 695, 701 (N.D. Ill.

2017) (citing *Corcoran v. Vill. of Libertyville*, 73 Ill. 2d 316, 327 (1978)); *see also Ward*, 136 Ill. 2d at 148 ("Even in the case of children on the premises, this court has held that the owner or possessor has no duty to remedy conditions presenting obvious risks which children would generally be expected to appreciate and avoid.").

"'Obvious' means that 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.'" *Bruns*, 2014 IL 116998, ¶ 16 (quoting Restatement (Second) of Torts § 343A cmt. b (1965)). Whether a dangerous condition is open and obvious may present a question of fact, but "where no dispute exists as to the physical nature of the condition, whether the dangerous condition is open and obvious is a question of law." *Id.* ¶ 18.

Importantly, a finding that a condition is open and obvious does not of itself preclude the existence of a duty. *Bruns*, 2014 IL 116998, ¶ 19. Rather, in carrying out a traditional duty analysis, courts use the open and obvious rule in evaluating the first two factors of the duty inquiry: the foreseeability and likelihood of injury. *Id.* Where the condition is open and obvious, the foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty. *Id.* This is because it is reasonable for a defendant to expect that a plaintiff will avoid an open and obvious danger, thus reducing the likelihood of injury. *Id.* After incorporating the open and obvious rule in this manner, courts proceed as usual to consider the magnitude and consequences of placing a burden on the defendant. *Id.*

Plaintiff concedes DSG's argument that, generally speaking, DSG is not a daycare center and does not have a legal duty to babysit unchaperoned children. However, Plaintiff argues the specific facts of this case establish DSG and N.S.S. stood in relationship to one another that the law imposed upon DSG an obligation of reasonable conduct for the benefit of N.S.S.  The Court disagrees.

As the Supreme Court of Illinois has explained, "[i]t is always unfortunate when a child gets injured while playing, but a person who is merely in possession and control of the property cannot be required to indemnify against every possibility of injury thereon.  The responsibility for a child's safety lies primarily with its parents, whose duty it is to see that his behavior does not involve danger to himself."  *Corcoran*, 73 Ill. 2d at 327.  Indeed, "a possessor of land is free to rely upon the assumption that any child old enough to be allowed at large by his parents will appreciate certain obvious dangers or at least make his own intelligent and responsible choice concerning them." *Mount Zion State Bank & Tr. v. Consol. Commc'ns, Inc.*, 169 Ill. 2d 110, 117 (1995).

Here, riding the escalator in the way N.S.S. did presented an open and obvious danger.[2]  A reasonable eleven-year-old in N.S.S.'s position would recognize, just as N.S.S. did, that straddling a moving escalator handrail and attempting to dismount before a steep decline is unsafe by any standard.  As such, N.S.S.'s injury was not

---

[2] Notably, Plaintiff acknowledges that if N.S.S. was riding the escalator's handrail as it began to descend, where the fall would be up to twenty feet, *that* would be an open and obvious risk.  But Plaintiff claims the approximately three to five feet where the handrail was parallel to the floor—where a fall would only be three feet and where N.S.S. *intended* to ride—does not present such an open and obvious risk.  The Court wholly rejects this contention.

reasonably foreseeable to DSG because it could reasonably have expected N.S.S. to avoid the open and obvious danger presented by riding the escalator handrail. *See Gutterman*, 242 F. Supp. 3d at 703. Similarly, because the open and obvious nature of the danger presented by the escalator made it likely N.S.S. would avoid any injury, N.S.S.'s injury was not likely to occur. *Id.* The Court therefore concludes that the first two factors in the duty analysis weigh against imposing a duty on DSG in this case.

This leaves the magnitude of the burden of guarding against the injury and the consequences of placing that burden on DSG. The magnitude of a burden reflects financial considerations relative to the specific condition at issue, whereas the consequences of a burden reflect broader, systemic concerns. *See Gutterman*, 242 F. Supp. 3d at 703 (citing *Bruns*, 2014 IL 116998, ¶ 37).

In assessing the burden of "guarding against" potential harm, *Dunn*, 880 F.3d at 906, a court should not frame the inquiry in terms of conceivable eventuality; instead, it must consider the burden of protecting against a reasonably foreseeable injury. *See Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 652 (7th Cir. 2014) (declining under Illinois law to impose duty of "continuous monitoring and patrolling of a store's safety conditions" because doing so would be too burdensome) (citing *Howard v. Wal–Mart Stores, Inc.*, 160 F.3d 358, 359 (7th Cir. 1998) (same)). Moreover, "[d]efendants should not be confronted with the impossible burden of rendering their premises injury-proof . . . they are entitled to the expectation that their patrons will exercise reasonable care for their own safety." *Richardson v. Vaughn*, 251 Ill. App. 3d 403, 409 (1993).

This case is akin to other cases where courts have found the burden too onerous on the defendant as it would be requiring them to take additional costly measures. *See Zuppardi*, 770 F.3d at 652; *Gutterman*, 242 F. Supp. 3d at 703–04 (requiring a retailer to patrol various items that could cause harm if used improperly by customers while browsing was too high of a burden); *McCarty v. Menards*, 319 F. Supp. 3d 974, 988–89 (N.D. Ill. 2018) (declining to impose burden of constantly monitoring premises after a sign injured the plaintiff); *Rosales v. Menard, Inc.*, 2018 WL 2299232, at *3 (N.D. Ill. 2018) (finding that imposing burden of disallowing customers from transporting two-by-fours would be too high a burden in hardware store); *Caselberry v. Home Depot U.S.A., Inc.*, 2019 WL 10894136 (N.D. Ill. 2019) (finding that eliminating or decreasing the use of hoses would damage Home Depot's plants and flowers after plaintiff tripped on hose).

It is undisputed that N.S.S.'s incident was the first time anyone has fallen off an escalator in the Subject Store. It is further undisputed that DSG employees at the Subject Store have never seen a customer straddle and/or ride the handrail on either escalator. Imposing a duty upon DSG to prevent accidents like N.S.S.'s from happening would likely entail significant cost and effectively turn DSG employees into babysitters, requiring them to follow around every unaccompanied minor to ensure they do not misbehave while in the store. This takes time away from an employee's other duties and prevents employees from helping the other customers in the store.

11

Plaintiff argues the burden against guarding the injury is nonexistent, focusing on Toman's testimony that, as a store manager, she was responsible for the safety of DSG employees and customers. And that if unaccompanied minors start misbehaving in the store, DSG employees have the responsibility to first admonish the minors for their behavior and then have a DSG manager ask the minors to leave the store if they continue to misbehave. Plaintiff also emphasizes Toman's testimony that it would have been her responsibility to walk N.S.S. and his friends out of the store once she asked them to leave, although she did not do so because she had to take a phone call. But Plaintiff conflates the responsibilities of a DSG store manager with a legal duty. Courts have repeatedly rejected the notion that a store's internal policies create a legal duty or new standard of care. *See, e.g.*, *Zuppardi*, 770 F.3d at 652 ("Although Wal–Mart's internal policy requires employees to continuously monitor the [high traffic aisles where plaintiff was injured], this goes above and beyond the duties required of businesses by Illinois courts and does not create a new legal standard of ordinary care requiring the same."); *Doe v. Coe*, 2019 IL 123521, ¶ 36 ("Penalizing a defendant by imposing a duty on it to comply with self-imposed safety measures that exceed any duty imposed by law, however, would discourage employers from creating policies intended to protect their employees and the public. We decline to do so."); *Morton v. City of Chi.*, 286 Ill. App. 3d 444, 454 (1997) ("[T]he violation of self-imposed rules or internal guidelines . . . does not normally impose a legal duty, let alone constitute evidence of negligence"); *Rhodes v. Ill. Cent. Gulf R.R.*, 172 Ill. 2d 213, 238 (1996) ("Where the law does not

impose a duty, one will not generally be created by a defendant's rules or internal guidelines. Rather, it is the law which, in the end, must say what is legally required.").

The Court concludes that, on balance, all four factors in the duty analysis weigh against imposing a duty of care on DSG in this case. Accordingly, Plaintiff cannot make out her *prima facie* case under a theory of negligence or premises liability, and summary judgment for DSG is granted.[3]

## **CONCLUSION**

For the reasons mentioned above, the Court grants Defendant DSG's Motion for Summary Judgment [24] and enters judgment in its favor. Civil case terminated.

It is so ordered.

Dated: June 30, 2022

Charles P. Kocoras
United States District Judge

---

[3] Because the Court grants summary judgment on this basis, it need not consider the additional arguments pertaining to actual or constructive notice of the allegedly dangerous condition. *See Gutterman*, 242 F. Supp. 3d at 704 n.7.